Cazey v. State 






REVERSED AND REMANDED
AUGUST 23, 1990

NO. 10-89-079-CR
Trial Court
# 13,986
IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

LEONARD ODELL CAZEY,
   Appellant
v.

THE STATE OF TEXAS,
   Appellee

* * * * * * * * * * * * *

 From 82nd Judicial District Court
Robertson County, Texas

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
     Leonard Odell Cazey was convicted by a jury for the offense of
attempted murder, enhanced by two prior convictions, and assessed
punishment at 99 years in the Texas Department of Corrections--the
maximum sentence for the crime. In this appeal of his conviction
and sentence he brings eleven points of error which essentially
complain that the prosecutor made improper statements during
argument, that the court gave an improper instruction to the jury,
that the state failed to prove a prior conviction for enhancement,
that his trial counsel provided ineffective assistance, and that
the evidence was insufficient to support his conviction. 
     Although Cazey's insufficient evidence point is asserted as
his final point of error, for the sake of efficiency we will
consider it first. The test for sufficiency is "whether, after
viewing all the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt." 
Chambers v. State, 711 S.W.2d 240, 245 (Tex. Crim. App. 1986). 
     The complainant, Ricky Green, testified that on November 11,
1988, he was taking his trash to his in-law's trash dump. On the
way to the dump, he had to stop to open a gate that was near
Cazey's trailer house. When Cazey saw Green drive up to the gate,
he came out of his trailer and told Green he would shoot him if
Green went through the gate. Cazey said that Green was interfering
with deer hunters that were on his property. Green then told Cazey
he would turn around and go another way, but he could "go down the
road anytime [he] wanted to." After hearing this, Cazey went
inside the trailer. Green was in his truck, turning around, when
he heard a shot. Green looked out the truck window and saw Cazey
standing on his front porch firing at him with a .22 caliber rifle. 
Fearing he would be killed, Green fell over onto the seat to his
right. After the shooting stopped, Green drove home and called the
sheriff's department. 
The evidence showed that there was a bullet hole above the
passenger-side door handle, three in the bottom part of the
passenger-side door, and a bullet hole between the door and the
wheel well of the tire. The passenger-side window was shattered by
a bullet, and there was a bullet hole right above the stereo
speaker inside the "right hand" door (passenger-side door) of the
truck. Green testified that when the bullets were hitting the
truck he believed that Cazey was trying to kill him. Two of the
bullets lodged in the cushion of the seat just below where he was
lying. Green told the jury that one of the bullets landed probably
within three inches of his body, and that the bullet that came
through the window hit at "eye level."
To obtain a conviction for attempted murder the state must
prove that the defendant, with the specific intent to commit
murder--murder being defined as intentionally or knowingly causing
the death of an individual--does an act amounting to more than mere
preparation that tends but fails to effect the commission of the
offense intended. See TEX. PENAL CODE ANN. §§ 15.01(a),
19.01(a)(1) (Vernon Supp. 1990 and Vernon 1989). Cazey's defense
was that he did not intend to kill Green. However, if for no other
reason than the proximity of the bullets to Green's body, any
rational trier of fact could have found the essential elements of
the offense of attempted murder beyond a reasonable doubt. Cazey's
eleventh point is overruled.
Cazey maintains in his first three points of error that his
conviction should be reversed because the prosecutor, at the guilt-innocence stage of the trial, requested the jury to consider
extraneous offenses committed by Cazey. The court's charge
instructed the jury not to consider extraneous offenses for any
purpose other than in determining the specific intent of Cazey to
commit the offense on trial. 
The statements that Cazey asserts call for reversal were:
Enough is enough. In 1974, Leonard Odell Cazey
tries to kill James Kellum and Haskell Longsford. In '75
he has a gun that the Sheriff and James Kellum tell him
he has to drop. How many incidences of Leonard Odell
Cazey shooting at people, trying to kill at least some of
those people, before somebody says enough? Today has got
to be that day. 
 
Maybe if something had been done in '74 or '75 or
'77 or '81 when he was shooting at other people, as James
Kellum tells you in December '74, "he shot at me and I
believe he was trying to kill me." He was trying to
execute an arrest warrant at a house in Easterly and the
response to him trying to arrest him was shotgun fire. 
In '75 when Sheriff Hurley and Deputy Kellum again tried
to arrest him he shows the gun and they have to pull
their weapons to make him drop it.
 
Anger is certainly enough motive to kill. So little
regard for human life, so little regard for people's
property, you have seen over and over again in this
courtroom today from shooting at James Kellum and Haskell
Longsford, to tearing up mailboxes, to shooting at
houses that contained children and a family. So little
regard for human life and property of those humans. I
don't think it bothers him, Leonard Odell Cazey. I don't
think he has to have a reason to kill Ricky Green, and
that is tragic. That is why it would be tragic if you
returned a verdict of anything other than guilty and a
finding that Leonard Odell Cazey used a deadly weapon.

     No objections by the defense were made to any of these
statements at trial. Therefore, these complaints are waived unless
the prosecutor's argument was so prejudicial that an instruction to
disregard would not have cured the harm. See Romo v. State, 631
S.W.2d 504, 505 (Tex. Crim. App. [Panel Op.] 1982).
 Permissible jury argument is limited to (1) a summation of the
evidence, (2) a reasonable deduction from the evidence, (3) a
response to argument of opposing counsel, or (4) a plea for law
enforcement. Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim.
App. 1973). Even if argument falls outside of these four areas,
reversible error exists only if the argument is extreme or
manifestly improper, or injects new and harmful facts into
evidence. Shipley v. State, 729 S.W.2d 349, 350 (Tex. App.--San
Antonio 1987, no pet.). Assuming Cazey had objected, and assuming
the argument fell outside of the parameters of proper jury
argument, beyond a reasonable doubt, the error made no contribution
to Cazey's conviction. See TEX. R. APP. P. 81(b)(2). Evidence of
the extraneous offenses was properly before the jury, and the
prosecutor told the jury nothing it could not have concluded on its
own. As seen in the discussion of point eleven, supra, the
evidence against Cazey was overwhelming, and he would have been
convicted regardless of any mention of extraneous offenses. Points
one through three are overruled. 
     Cazey asks this court in his fourth point to reverse his
conviction due to the "prosecutor's impermissible comment on
[Cazey's] failure to testify." During closing argument at the
guilt-innocence stage of the trial the prosecutor said:
If one of these bullets had come a few inches closer
and killed Ricky Green, you would be extremely incensed
to that kind of argument and you would not hesitate at
all to say, "Sure, Leonard Odell Cazey is guilty of
murder." And don't you know what you would hear in the
defense in that case? "Oh, but I didn't intend to kill
him. I just intended to scare him." And you would
think, "My God, how could somebody say that?" And when
you look at this case you should have the same reaction.

As authority for this point, Cazey cites Cook v. State, 702
S.W.2d 597 (Tex. Crim. App. 1984) and Cherry v. State, 507 S.W.2d
549 (Tex. Crim. App. 1974). However, in each of these cases the
prosecutor was suggesting to the jury possible defenses that could
be raised, but had not been raised at the time. In this case, as
the State points out, Cazey's attorney attempted to establish both
on cross and direct examination of the witnesses that Cazey did not
intend to kill Green. The use of the word "I" did not comment on
Cazey's failure to testify; it was merely used to show that Cazey's
lack-of-intent defense was not plausible. This point is overruled.
Points five and six concern the use of extraneous offenses at
the punishment phase of the trial. Cazey insists in point five
that the prosecutor, during oral argument, improperly requested the
jury to punish Cazey for uncharged extraneous offenses and in point
six that because evidence of extraneous offenses had been
admissible in the guilt-innocence stage of the trial only for the
limited purpose of showing intent, the court erred in instructing
the jury that it could take into consideration in assessing
punishment all of the evidence admitted in the trial. Point
six is overruled because the law is clear that the trial judge may
instruct the jury that it is permitted to take into consideration
"all of the evidence" admitted at trial. Jones v. State, 567
S.W.2d 197, 208 (Tex. Crim. App. [Panel Op.] 1978). Such an
instruction does not remove restrictions placed upon the admission
of the extraneous offenses during the guilt-innocence stage; the
jury may consider "all of the evidence" only for the purposes for
which it is admitted.
Cazey's fifth point asks for reversal of his punishment based
upon the following comments by the prosecutor during argument:
You know from the other evidence you heard in this
case and the Judge tells you in the Charge of the Court,
the Charge on punishment that you can consider that
evidence, that this is the man who shot at James Kellum
in 1974. This is the man who the Sheriff and James
Kellum have to pull guns upon to take the gun away from
him in 1975. This is the same man who the Ainsworths
testified called by the Defendant three times has shot at
them or their property. This is the man who James Kellum
and Sheriff Hurley had to go after when Doris Barnhouse
made a complaint about shooting at her grandchildren. 
This is the man who is a criminal, who you've said is a
criminal, who another jury has said is a criminal, who
has been to the penitentiary before as a criminal, and
you must assess punishment.

Because the evidence of extraneous offenses was admissible
only to show Cazey's intent to commit attempted murder, the
prosecutor improperly referred to such evidence in his argument on
punishment. However, there was no objection to this argument, and
the complaint is waived unless the statements were so prejudicial
that an instruction to disregard would not have cured the harm. 
See Willis v. State, 785 S.W.2d 378, 385 (Tex. Crim. App. 1989). 
Although the remark to the jury that it could consider the
extraneous offenses based upon the judge's charge providing that
the jury could consider all of the evidence was incorrect, an
instruction to disregard probably would have cured the harm that
remark caused. However, the prosecutor did not stop there. In
what appears to be an effort to persuade the jury to punish Cazey
for being a criminal generally, he erroneously proceeded to recount
each extraneous offense, reminding the jury specifically of
evidence which had been admitted merely to show intent. See TEX.
CODE CRIM. PROC. ANN. art. 37.07 § 3(a) (Vernon Supp. 1990). We
cannot hold that this error was harmless. Cazey was assessed the
maximum sentence available when his two prior convictions properly
admitted for enhancement were a 1963 burglary and a 1981 D.W.I. 
Nor does the failure by Cazey's counsel to object dissuade us from
finding reversible error because we believe the prosecutor's
argument was so prejudicial that an instruction to disregard would
not have cured the harm. See Romo, 631 S.W.2d at 505; Plunkett v.
State, 580 S.W.2d 815, 823 (Tex. Crim. App. 1978). Point five is
sustained, and the cause is reversed and remanded for a new trial. 
See Ex parte Sewell, 742 S.W.2d 393, 397 (Tex. Crim. App. 1987)
(holding on rehearing that the trial court is the proper forum to
urge under the authority of Article 44.29(b) of the Texas Code of
Criminal Procedure that the case be retried on punishment only).
Points seven and eight concern Cazey's prior burglary
conviction which was used by the State for enhancement purposes. 
For the convenience of the parties on remand, we shall address
these points.
By point seven Cazey requests this court to remand for new
sentencing because "the State failed to prove the allegation of the
prior conviction for burglary." Cazey maintains that there is a
fundamental variance between the indictment, alleging that he was
convicted in Cause No. 11,572 in Robertson County on October 2,
1961, and the proof which showed that he was not sentenced in the
cause until June 3, 1963. Evidently, the indictment used the date
Cazey was placed on probation for the burglary offense--1961--while
the true conviction date was actually when his probation was
revoked--1963. See Cockrell v. State, 632 S.W.2d 664, 667 (Tex.
App.--Fort Worth 1982, pet. ref'd). 
A variance between the allegation of the indictment and the
proof presented at trial is material and fatal only if it would
mislead a defendant to his prejudice. Klasing v. State, 662 S.W.2d
789, 792 (Tex. App.--Corpus Christi 1983, pet. ref'd). Because the
cause number, county and type of offense were the same in both the
indictment and the proof, and because the 1961 date was when Cazey
was placed on probation for the offense of which he was convicted
in 1963, there is no way Cazey could have been misled or prejudiced
by the variance here. Accordingly, this point is overruled.
Cazey asserts in his eighth point that the State failed to
prove beyond a reasonable doubt that he is the same man as was
previously convicted in cause no. 11,572. In his brief, Cazey
quotes part of the testimony from the State's fingerprint expert,
and alleges that the "expert never gave an opinion as to a
fingerprint comparison." However, as the State explains in its
brief, the expert witness testified: "That in the right thumb and
to the core at the center, there are similar ridge characteristics
that would lead me to believe in my opinion, this is the same
person." Point eight is overruled.
The last two points, numbers nine and ten, contain Cazey's
complaints that his conviction and punishment should be reversed
due to "ineffective assistance of counsel." He argues that his
rights were violated pursuant to the sixth and fourteenth
amendments to the U.S. Constitution and article I, section 10 of
the Texas Constitution. See U.S. CONST. amends. VI, XIV; TEX.
CONST. art. I, § 10. 
Because this case is being reversed and remanded due to error
at the punishment phase of the trial, we need only examine Cazey's
attorney's performance as it relates to his conviction. The United
States Supreme Court in Strickland v. Washington, 466 U.S. 688,
687, 104 S. Ct. 2052, 2064 (1984), provided a two-prong test for
deciding ineffective assistance claims: (1) a defendant must show
that counsel's performance was deficient, and (2) that the
deficient performance prejudiced the defense. This is a
conjunctive test, and the failure of a defendant to prove either of
the prongs compels the reviewing court to overrule the complaint. 
See Smith v. State, 751 S.W.2d 902, 907 (Tex. App.--Houston [14th
Dist.] 1988, no pet.).
Cazey, in his brief, lists several instances before and during
trial where he feels his attorney failed him. Assuming that Cazey
is correct, and that his counsel did provide a deficient
performance, would Cazey still have been convicted? Cazey must
show that, "but for counsel's unprofessional errors, the result
would have been different." See Strickland, 446 U.S. at 694, 104
S. Ct. at 2068. As discussed in the previous points, the evidence
was strong against Cazey. There was direct evidence that Cazey
shot at the complainant several times in succession, and that the
bullets hit extremely close to Green. This evidence was going to
reach the jury regardless of anything Cazey's attorney could have
done, and this evidence alone was enough to secure a conviction.
While it is possible that the performance of Cazey's trial
counsel contributed to Cazey's receiving a 99-year sentence, we
cannot say that such performance made any difference in Cazey's
being convicted. Cazey is remanded to the custody of the Sheriff
of Robertson County to answer to the indictment in trial court
cause number 13,986, entitled The State of Texas vs. Leonard Odell
Cazey.
REVERSED AND REMANDED
 
                              
TERRY R. MEANS
DO NOT PUBLISHJustice